**STATE of Tennessee, Appellee,**

v.

**Luther E. GRADY, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 25, 1980.

Eddie L. Headrick, Cleveland, for appellant.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Richard A. Fisher, Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

JOHN D. TEMPLETON, Special Judge.

Luther E. Grady, Jr. was charged in separate indictments with attempt to have carnal knowledge of a female while she was 11 years old and attempt to rape her while she was 12. He was convicted of assault and battery with intent to molest and fondle a female under 12, and of attempt to commit a felony, and sentenced to two to five years in the penitentiary in each case, the terms to be served consecutively. On appeal he challenges the sufficiency of the evidence. He further insists the judge improperly excluded testimony concerning prior inconsistent statements of witnesses who admitted on the witness stand they made the prior inconsistent statements; and that the judge abused his discretion in the matter of consecutive terms. We modify the judgment to provide for concurrent terms but otherwise affirm it.

The state's proof consisted entirely of the victim's testimony and that of her younger brother. She was 15 and he was 12 at the time of the trial November 16, 1979. Their mother and father were divorced and the mother married appellant about 1969 to which union two other children were born.

The girl testified concerning the details of three incidents. She testified that at the time of Halloween 1975 and in November 1976, he took her into his bedroom and tried to have sexual intercourse with her but did not achieve penetration. She further testified that in March, April or May 1976, he took her in the bedroom and actually penetrated her rectum. Since she was born

October 21, 1964 the Halloween 1975 and spring 1976 incidents occurred when she was 11 and the November 1976 incident when she was 12. In all instances he used force. She further said "That was the only times I could pick out dates for, but that's not the only times he has done it. I mean tried to do it". The girl's younger brother testified about five different incidents when he saw appellant in bed on top of the girl. Once she was screaming and another time she was crying.

It was shown that the girl did not report any misconduct of appellant until September 1977 and probably would not have reported it then of her own volition but it was reported to relatives in her presence by the boy and confirmed by her. Also, when reported the appellant had just refused permission for the children to visit the relatives in Kentucky. Both children on various occasions recanted, stating that their reports were false, and on the witness stand freely admitted recanting. In addition, cross examination disclosed conflicts and confusion in some of their testimony.

█ In connection with the sufficiency of the evidence, appellant insists the competency of the boy to testify was not determined. The rule is that at the age of 14, a witness is presumed to be competent but under that age the presumption does not arise. It is the duty of the judge to examine a child under 14 to ascertain if he is competent. The judge should determine whether the child understands the nature and meaning of an oath, is of sufficient intelligence to comprehend the things about which he is called to testify, and is capable of knowing and relating the facts accurately. The determination is within the discretion of the judge and his discretion will be reviewed only for gross abuse. *Ball v. State*, 188 Tenn. 223, 219 S.W.2d 166 (1949). It does appear that in the case before us the judge announced the boy was intelligent and could testify without any examination and after the boy only had been sworn and had given his age. However, the child testified at length from which it appears he was competent. In view of the testimony

we think the failure of the judge to make a preliminary determination was harmless error. Also, the matter was not raised on the motion for a new trial and is waived. T.R.A.P. 3(e).

Appellant testified and denied all of the allegations of misconduct.

█ The jury accepted the theory of the state at least to the extent of finding appellant guilty of the lesser included offenses and the judge approved the verdicts. We think the evidence was sufficient to establish appellant's guilt beyond a reasonable doubt. T.R.A.P. 13(e).

Appellant insists it was error to exclude the testimony of his witnesses regarding the children's prior inconsistent statements because the impression left by the children and urged on the jury by the state was the children recanted by reason of pressure from appellant. He says exclusion of the testimony made it impossible for him to adequately test the children's credibility on their explanation of why they made the prior statements.

█ The general rule is testimony concerning prior inconsistent statements is inadmissible if the witness unequivocally admits making them. Paine, Tennessee Law of Evidence, Sec. 193 (1974); McCormick, Evidence, Sec. 37 (2nd Edit. 1972); 81 Am. Jur.2d, Witnesses, Sec. 608. Excluding the testimony saves time and minimizes the calling of witnesses upon what is only a side issue. McCormick, Ibid.

█ Although the general rule is such testimony is inadmissible, we think the judge, in the exercise of his discretion, may allow evidence where the witness undertakes to explain away prior inconsistent statements or excuse himself for having made them. So, where the witness claims the prior statements were made in jest, or under compulsion, or because of some other condition which rendered him blameless, the testimony of other witnesses may be introduced to show the contrary. In exercising his discretion the judge balances the need to expedite the case against the need to test the credibility of the witness.

Here the children admitted unequivocally that they made prior inconsistent statements to both family and outsiders. They made little or no effort on the witness stand to excuse their actions. Actually, neither testified that appellant exerted pressure on them; only that he was around and supported by their mother and possibly other family members. It is likely they made the statements in the hope they might rid themselves of involvement in the legal process. The boy did strongly imply that the last time he recanted he acted entirely under appellant's influence but appellant testified about that. We think the judge did not abuse his discretion and that he properly excluded the testimony of appellant's witnesses.

The judge ordered the sentences served consecutively, "Because of the reasons enumerated by the Attorney General". The reason stated by that officer were (1) appellant entered into a plan with his wife to frustrate the custody order which placed the children in the custody of the Department of Human Services to keep him away from them, (2) he used his parental influence to persuade the children to change their statements and lie at the trial, (3) he had a 10 year old grand larceny conviction, (4) he committed many offenses with the child but was charged with only two and, (5) his parental persuasion might run into harming the children after his conviction.

A consecutive sentence should be imposed only after a finding by the judge that confinement for such a term is necessary to protect the public from further criminal conduct by the defendant. Types of offenders for which consecutive sentencing should be reserved may be classified as (1) the persistent offender, (2) the professional criminal, (3) the multiple offender, (4) the dangerous mentally abnormal person, and (5) the dangerous offender. *Gray v. State*, 538 S.W.2d 391 (Tenn.1976). The state reasons that appellant was found to be a "dangerous offender" as defined in *Gray* which is justified because of his repeated sexual activity with the child. *Bethany v. State*, 565 S.W.2d 900 (Tenn.Cr. App.1978); *Morgan v. State*, 582 S.W.2d 94 (Tenn.Cr.App.1979); *Vermilye v. State*, 584 S.W.2d 226 (Tenn.Cr.App.1979).

In *Bethany* a scoutmaster was convicted of six charges of crime against nature committed with young boys he took on a camping trip. He had formed an organization of small boys for the purpose of engaging them in homosexual activity and had purchased for them alcohol and tobacco. Although he did not fit precisely in a *Gray* classification, the judge concluded from the facts of the case and medical reports he was closely identified with the description of a dangerous mentally abnormal person and a dangerous offender. In approving the imposition of cumulative sentences this Court noted that *Gray* did not precisely define every factual situation which would authorize cumulative sentences and concluded the guidelines were broad enough to include the factual situation in this case. In *Morgan* the defendant kidnapped, raped and committed a crime against nature on a child 13 years old. Cumulative sentences were approved because the judge "found aggravating circumstances in these inherently dangerous crimes." 582 S.W.2d 94, at 98. The crimes were committed with force and threats on a young child. The court observed that in *Bethany*, "this court recognized that the protection of young children may be taken into account when considering consecutive sentences". 582 S.W.2d 94, at 98. In *Vermilye* the defendant was convicted of eight charges of crime against nature with young boys. He was in the business of furnishing to the public pornographic material involving the boys. Cumulative sentences were approved under authority of *Bethany*. However, it was not on the basis that he was a dangerous offender but on the basis that "a four or five year course of dealing by the defendant that makes him a persistent and repeated offender, who derived most (if not all) of his livelihood from the sexual exploitation of these children". 584 S.W.2d 226, at 231.

In these cases the courts did not intend to depart from *Gray* standards but professed in each to have identified a standard

present that justified cumulative sentences. In *Morgan* the crimes themselves were inherently dangerous and committed under aggravating circumstances. In *Bethany* the facts of the case coupled with the medical reports enabled the court to say the defendant was a dangerous offender. Although the court in *Vermilye* appeared to expand the *Gray* definition of a persistent offender and to base its conclusion on that, implicit in the decision is the fact the defendant also was a professional criminal. Although in *Bethany* and *Vermilye* the crimes themselves were not inherently dangerous, the particular facts and circumstances made them dangerous and justified the imposition of cumulative sentences under *Gray* standards for the protection of children.

Returning to the reasons given for imposing consecutive sentences, we think under the facts of this case the first two reasons, which concerned appellant's conduct in gaining access to the children after the custody order was made and encouraging them to favor his position in the trial, were improper considerations. We find no evidence to support the apprehension expressed in the fifth reason that appellant might harm the children because of their testimony. The fourth reason, the prior larceny conviction, would be appropriate on whether appellant was a persistent offender except for the fact that it stands alone. We agree with the state the real inquiry is whether by *Gray* standards appellant will be deemed a dangerous offender in the light of the child sex abuse cases above referred to. We, therefore, focus on the fourth reason, that appellant committed many offenses with the child over a period of time. Although not articulated in the trial, we assume the judge considered such conduct brought appellant within the definition of a dangerous offender who acted under aggravating circumstances and he imposed consecutive sentences for the protection of young children.

"A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk of human life is high... The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact two or more dangerous crimes were committed...". *Gray v. State,* supra, at 393.

In the case before us the jury no doubt accurately assessed appellant's guilt when it convicted him on the lesser included offenses. His conduct, however despicable, posed no threat to human life. We are unable to equate his conduct with that of the defendants in *Bethany, Morgan* and *Vermilye.* To do so, in our opinion, would lump every defendant guilty of sex crimes against children into the classification of dangerous offender and authorize consecutive sentences in every case. We think that under the facts and circumstances here appellant may not be classified as a dangerous offender and it was an abuse of discretion to order consecutive sentences.

The judgment is modified to order the terms served concurrently and is otherwise affirmed.

DWYER and BYERS, JJ., concur.