Charles E. BROWN, Appellant,

v.

ANCHORAGE, A Municipal Corporation, Appellee.

No. 7700.

Court of Appeals of Alaska.

April 27, 1984.

---

Joseph A. Kalamarides, Anchorage, for appellant.

Michael S. Marsh, Asst. Municipal Prosecutor, Allen M. Bailey, Municipal Prosecutor, and Jerry Wertzbaugher, Municipal Atty., Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Charles Brown was convicted of assaulting a police officer. AMC 8.05.030(D).[1] He was sentenced to forty-five days' imprisonment. He appeals his conviction and sentence. We reverse.

On October 8, 1982, Anchorage Police Officer Edward Budd was called to investigate an accident involving a parked vehicle. When he arrived at the scene, the owner of the parked car gave Budd a note left by the driver of the other vehicle containing a name, address and driver's license number. Budd went to the address indicated in the note. When he arrived he found a pickup truck in the driveway which he suspected was involved in the accident because all of the dirt had been scraped off in an area corresponding to the damaged area on the other car. When Budd was allowed into the residence by Jack Peterson, Sr., he asked to speak to the driver of the pickup. Peterson pointed to Charles Brown, who was asleep on the couch. Budd awakened Brown and a struggle ensued. Peterson aided Brown in the struggle and Brown managed to strike Officer Budd several times in the face. Budd obtained assistance and Brown and Peterson were arrested.

Brown contends that the trial court erred in refusing to give a jury instruction on use of force in resisting arrest. We agree and reverse.

■ Brown relies on AS 11.81.370 and AS 11.81.400.[2] He argues that there was

Brown argues that he was illegally arrested under this statute and evidence of everything that occurred thereafter, including his resistance, should have been suppressed. We disagree.

In *State v. Sundberg*, 611 P.2d 44 (Alaska 1980), the supreme court held that when a police officer violates this statute by unreasonably shooting a fleeing burglar, suppression of evidence contemporaneously seized from the wounded burglar is not warranted nor is the burglar's arrest invalidated. *Sundberg* is dispositive of this issue.

Alaska Statute 11.81.400 provides:
*Justification: Use of force in resisting or interfering with arrest.* (a) A person may not use force to resist personal arrest or interfere with the arrest of another by a peace officer who is known by the person, or reasonably appears, to be a peace officer, whether the arrest is lawful or unlawful, unless
   (1) the force used by the peace officer exceeds that allowed under AS 11.81.370; ...
   (b) the use of force justified under this section in resisting arrest or interfering with the arrest of another may not exceed the use of force justified under AS 11.81.330 or 11.81.335.

Brown was prosecuted for violation of a municipal ordinance. It is unclear to what extent the defense set out in the revised code is relevant. However, apart from the statutes, case law establishes the right to resist a police officer when excessive force is used to effectuate either an unlawful arrest, *see Gray v. State*, 463 P.2d 897, 908 (Alaska 1970), or an unlawful search, *see Elson v. State*, 659 P.2d 1195, 1200 n. 18 (Alaska 1983). It appears that this privilege should be extended to cover physical resistance to unlawful and forceful detentions or seizures.

1. Anchorage Municipal Ordinance 8.05.030(D) provides:
   It is unlawful when an assault or battery or both is committed against the person of a peace officer or fireman, and the person committing the offense knows or reasonably should know that such victim is a peace officer, fireman or paramedic engaged in the performance of his duties.

2. Alaska Statute 11.81.370 provides:
   *Justification: Use of force by a peace officer in making an arrest or terminating an escape.*
   (a) In addition to using force justified under other sections of this chapter, a peace officer may use nondeadly force and may threaten to use deadly force when and to the extent the officer reasonably believes it necessary to make an arrest, to terminate an escape or attempted escape from custody, or to make a lawful stop. The officer may use deadly force only when and to the extent the officer reasonably believes the use of deadly force is necessary to make the arrest or terminate the escape or attempted escape from custody of a person the officer reasonably believes
      (1) has committed or attempted to commit a felony which involved the use of force against a person;
      (2) has escaped or is attempting to escape from custody while in possession of a firearm on or about the person; or
      (3) may otherwise endanger life or inflict serious physical injury unless arrested without delay.
   (b) The use of force in making an arrest or stop is not justified under this section unless the peace officer reasonably believes the arrest or stop is lawful.
   (c) Nothing in this section prohibits or restricts a peace officer in preparing to use or threatening to use a dangerous instrument.

some evidence from which the jury could have inferred that Officer Budd used excessive force and therefore that Brown's physical resistance was privileged.

■ We agree. In *Folger v. State*, 648 P.2d 111 (Alaska App.1982), this court reversed a conviction for assault because the trial court failed to give an instruction on self-defense. We said: "The burden is on the defendant to produce some evidence in support of his claim of self-defense before he is entitled to a jury instruction on that defense." 648 P.2d at 113. "Some evidence" is evidence in light of which a reasonable juror could entertain a reasonable doubt about the element in question. *Id.* In determining whether the jury should have been instructed on self-defense this court will construe the evidence in a light most favorable to the accused. *Paul v. State*, 655 P.2d 772, 773 (Alaska App. 1982). The burden to produce "some evidence" of self-defense is not a heavy one. *See Paul v. State*, 655 P.2d at 778. In *Folger* we stressed that even a weak or implausible self-defense claim is a question for the jury. 648 P.2d at 113. We hold that the same rules govern instructions on the use of force in resisting arrest.

■ Construing the evidence in a light most favorable to Brown, the jury could have found that Jack Peterson's son, rather than Brown, was the driver of the vehicle involved in the accident. Jack Peterson, Jr. and Brown had arrived home early that morning from a party; Brown went to sleep on the couch and Peterson fell asleep in an armchair. In addition, the jury could have found that when Officer Budd was admitted to the house he attempted to awaken Brown by slapping and hitting him. Two witnesses testified that Officer Budd became more and more angry when Brown refused to wake up, and that he finally grabbed Brown and threw him to the floor. Further, there was testimony that as Brown tried to get up Officer Budd began slapping him again; Brown, in a stupor,

began "flailing around" and "caught [Officer Budd] with a fist or something." Budd then got out his billy club and struck Brown. Under the circumstances, the jury could have found that Budd's conduct constituted excessive force, excusing Brown's resistance. The trial court therefore erred in failing to instruct on use of force in resisting an arrest.

Brown makes two additional arguments. First he contends that his prosecution for assault on an officer was barred by the fourth amendment prohibition against unreasonable searches and seizures. Brown reasons that when Officer Budd grabbed him and forcibly awakened him, Budd seized him without probable cause or reasonable suspicion. Consequently, Brown's resistance to Budd was in effect an invocation of his constitutional right to be free of unreasonable searches and seizures. Brown concludes that under these circumstances permitting the state to prosecute him for the offense of assault on an officer would chill the invocation of constitutional rights and would violate the constitution. *See Elson v. State*, 659 P.2d 1195 (Alaska 1983). We disagree.

*Elson* does not create a blanket prohibition against the introduction of evidence of conduct which might be motivated by a desire to protect a constitutional right. In *Elson*, the court used an analysis essentially derived from Alaska Evidence Rules 401 and 403 to establish a privilege barring the use of evidence of a verbal refusal to consent to a search similar to the privileges barring evidence of subsequent remedial measures, ARE 407, and offers to compromise, ARE 408. *See Burnett v. Anchorage*, 678 P.2d 1364, 1369 (Alaska App.1984). The *Elson* court recognized that evidence that a defendant had refused to consent to a search might be relevant to show consciousness of guilt, *i.e.*, possession of contraband. The court concluded, however, that such evidence should nevertheless be excluded since the probative value of the

In the absence of any indication in the municipal ordinances to the contrary, we will assume that the responsibilities and rights of the arrest- ing officer and the resisting arrestee are the same under municipal and state law.

evidence was weak and outweighed by the danger of chilling the exercise of constitutional rights. However, the court limited the privilege to verbal nonconsent. Where a defendant forcibly resists a search, the privilege does not apply and evidence of resistance can properly be used to show consciousness of guilt. *Elson v. State,* 659 P.2d at 1200–01. The court apparently reasoned, as a matter of policy, that the risk of chilling constitutional rights in physical resistance cases is outweighed by the danger that a rule requiring suppression would encourage violence.[3] *See also Burnett v. Anchorage,* 678 P.2d at 1369.

In *Elson,* the court specifically found that the officer did not use unreasonable force in conducting the search. 659 P.2d at 1201. The *Elson* rule is therefore compatible with prior Alaska law that a person may be prosecuted for resisting a constitutionally unlawful but peaceful search or seizure unless the officer uses unnecessary force or is not readily identifiable as a police officer. *See Elson v. State,* 659 P.2d at 1200 n. 18; *Gray v. State,* 463 P.2d 897 (Alaska 1970); *Miller v. State,* 462 P.2d 421, 427 (Alaska 1969). A majority of jurisdictions are in agreement with this rule. *See* 1 W. LaFave, *Search and Seizure* § 1.11(a) (1978).

Therefore, even if we assume that Budd unconstitutionally seized Brown's person, Brown was only privileged to resist Officer Budd's unlawful seizure, and in the process assault him, if Budd used unnecessary or excessive force. Since that was a question of fact for the jury, Brown's motion to dismiss was properly denied, whether or not an illegal seizure took place. For the same reason the trial court did not err in denying Brown's Rule 29 motion for judgment of acquittal at the close of the evidence.

Finally, Brown argues that the trial court erred in denying his motion for judgment of acquittal on the theory that Budd's actions amounted to excessive force as a matter of law. Officer Budd's testimony contradicted Brown's witnesses. Budd's testimony, if believed, would have permitted a rational fact finder to conclude that Budd had not used excessive force in seizing Brown. Under these circumstances, the trial court properly denied Brown's motion for judgment of acquittal. *See Davis v. State,* 635 P.2d 481, 483 (Alaska App.1981). Credibility choices and the weighing of evidence are within the province of the trier of fact. *See Anthony v. State,* 521 P.2d 486, 492 (Alaska 1974).[4]

---

**3.** Justice Compton dissented. He reasoned that the Rule 403 analysis should produce the same result whether the defendant verbally refused consent or used "nonviolent" resistance. He expressed no opinion on the evidentiary effect of violent resistance. Justice Compton stressed, however, that his analysis did not preclude prosecution for the substantive offense of resisting arrest:

> I recognize that we cannot encourage violent resistance to police officers; however, adequate incentives for cooperation with the police are already present because individuals are subject to criminal penalties for resisting or interfering with an arrest. *See* AS 11.56.-700. Given this incentive, it seems unnecessary to add the additional incentive that nonverbal resistance, no matter how inoffensively exhibited, can be used as evidence of guilt.

659 P.2d at 1206.

**4.** Brown additionally contends that the trial court erred in giving Jury Instruction No. 7 which paraphrases AMC 9.10.040(A). The instruction provided:

> The driver of any vehicle involved in an accident resulting in damage to another's attended vehicle is required to provide his name, address, and vehicle registration number to any police officer investigating the accident and, upon the officer's request, to exhibit his driver's license.

The Municipality apparently concedes that Jack Peterson, Jr., rather than Brown, was the driver of the vehicle involved in the accident. Officer Budd was merely investigating at the time he entered the Peterson residence. Brown contends that the instruction, while a correct statement of the law, was irrelevant to his case and might have confused the jury. We agree with Brown that the instruction should not be given on retrial. *Instructions regarding an officer's right to conduct an investigation and contact citizens in a generalized request for information, see Howard v. State,* 664 P.2d 603, 608 (Alaska App.1983), *and the circumstances under which an arrestee may use force to resist an unlawful arrest carried out with excessive force should be sufficient to resolve this case.*

The judgment of the district court is REVERSED and the case is REMANDED for a new trial.