IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1997 SESSION

FILED

October 24, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01-C-01-9607-CC-00300 |
| APPELLEE, | ) | |
| | ) | Sequatchie County |
| v. | ) | |
| | ) | Thomas W. Graham, Judge |
| GEORGE WESLEY HARVILLE, JR. | ) | |
| | ) | (Aggravated Assault) |
| APPELLANT. | ) | |


FOR THE APPELLANT:

Edward L. Boring
Attorney at Law
P. O. Box 381
Pikeville, TN  37367

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN  37243-0497

Daryl J. Brand
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

J. Michael Taylor
District Attorney General
265 Third Avenue, Suite 300
Dayton, TN  37321

Will Dunn
Assistant District Attorney General
265 Third Avenue, Suite 300
Dayton, TN  37321


OPINION FILED: _____


AFFIRMED


Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, George W. Harville, Jr., (defendant), was convicted of aggravated assault, a Class C felony, by a jury of his peers. The trial court found the defendant was a standard offender and imposed a Range I sentence consisting of a $5,000 fine and confinement for four (4) years in the Department of Correction. In this Court, the defendant contends the trial court committed error of prejudicial dimensions by failing to suppress evidence on the ground the aggravated assault occurred after an unlawful stop by a police officer. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issue presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

The State of Tennessee correctly asserts the defendant has never stated in the motion to suppress, the hearing on the motion to suppress, and the brief filed in this Court what evidence he sought to suppress. The state is correct in its conclusion based upon the record presented to this Court.

The motion to suppress states in substance the defendant seeks to "suppress certain evidence" on the ground Officer James C. Jackson did not possess sufficient information to justify the Terry stop in question. He claims "all evidence obtained pursuant to this stop . . . was tainted by this illegal seizure and should be excluded." He seeks the entry of an order "suppressing the evidence seized . . . as the result of this illegal, unlawful and unreasonable stop." When this motion was heard prior to the trial, there was no mention of what evidence the defendant sought to suppress. The issue presented for review in this case refers to "certain evidence" which should have been suppressed. The argument portion of the brief does not allude to what evidence the defendant sought to suppress.

Before this Court can adjudicate the issue presented for review, this Court must speculate as to the nature of the "certain evidence" the defendant sought to suppress. Moreover, the predicate laid for the suppression of the evidence rests on an erroneous premise. When Deputy Jackson attempted to stop the defendant, he refused to stop in obedience to the emergency lights and siren. Instead, the defendant came to a stop when

2

his truck struck a mudhole on a dirt road. The record reveals Deputy Jackson did not seize any evidence as a direct result of the alleged "stop."

A review of the facts is necessary to establish the factual scenario which unfolded on the date in question.

Deputy Jackson, a Hamilton County deputy sheriff, was preparing a report in a parking area across the street from the Favorite Market, which is located on U.S. 127 in Hamilton County. He subsequently heard a driver of an automobile "laying on the horn." He looked to see why the driver was blowing the horn. Deputy Jackson saw the defendant, who was driving his pickup truck, make a wide right-hand turn from the parking lot of the Favorite Market into the north-bound lane on U.S. 127. When the defendant went into the south-bound lane while making the turn, a person driving an automobile in the south-bound lane began honking his horn.

It occurred to Deputy Jackson that the defendant may be driving while under the influence. He decided to follow the defendant. He observed the defendant weaving within his lane of traffic, "riding" the center line of the highway and driving onto the center line, and failing to maintain a constant speed when the defendant's lane was unimpeded. Given these circumstances and the fact it was raining, Deputy Jackson decided to stop the defendant to determine if his ability to operate the truck was impaired. He activated the emergency lights. The defendant did not stop. He activated the siren. The defendant did not stop.

When the defendant reached the Hamilton County-Sequatchie County line, Deputy Jackson alerted the dispatcher he was entering into Sequatchie County and he would need assistance. The dispatcher notified Sequatchie County law enforcement officers of what had occurred and asked the authorities to assist Deputy Jackson.

The defendant turned onto a dirt road in Sequatchie County, which was in a horrible state of repair. Deputy Jackson followed the defendant. The defendant subsequently hit a large mudhole in the road and his pickup truck was disabled. Deputy Jackson ordered the defendant, and a passenger, Robert W. King, to exit the pickup truck. The defendant exited the truck. Jackson then approached the truck with his weapon drawn. The defendant got back into the truck. Jackson retreated behind his cruiser. The defendant

exited the truck a second time and subsequently entered the truck again.

Deputy Jackson saw a firearm in King's hands. Jackson advised Officer Culpepper, a City of Walden police officer who had arrived to assist him, to take cover because the passenger had a firearm. King fired the weapon while inside the truck. A second shot was fired which struck the rear of the cruiser. Deputy Jackson fired two shots. He struck one of the tires on the truck as the defendant was attempting to drive away. The shooting ceased. King exited the truck

The defendant slid to the middle of the truck and reached for something. He then exited the truck and fled to a wooded area. Jackson pursued the defendant. He eventually saw a pistol in the right back pocket of the defendant's pants. While in the woods, Deputy Jackson confronted the defendant. The defendant drew the pistol from his back pocket. Deputy Jackson fired his weapon at the defendant. He struck the defendant. However, the defendant began walking toward Deputy Jackson with the pistol in his hand. Another officer who had arrived to assist Jackson tackled the defendant.

As previously stated, Deputy Jackson did not seize any evidence after the defendant's truck struck the large mudhole. The only evidence seized was incident to the arrest for what transpired after the truck was immobilized, namely, the aggravated assault. This evidence did not pertain to the defendant's operation of the truck.

This Court is of the opinion Deputy Jackson had reasonable and articulable facts to stop the defendant pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Deputy Jackson saw the defendant make a wide right turn which resulted in the defendant's motor vehicle crossing the center line into the opposing lane of traffic. He also viewed the defendant's vehicle weaving within its lane of traffic. The defendant was "riding" the center line and driving on the line at times. It was raining and the highway was wet. In short, these facts, coupled with all reasonable inferences and deductions which may be drawn from these facts, were sufficient to justify Deputy Jackson stopping the defendant to determine whether his ability to operate a motor vehicle was impaired. The defendant did not have the right to resist the stop even if the defendant thought Deputy Jackson did not have the authority to stop him. Tenn. Code Ann. § 39-16-602(b) and § 39-11-611(e).

4

This Court is further of the opinion Deputy Jackson did not "stop" the defendant within the meaning of the law. The defendant ignored the emergency lights and siren activated by Deputy Jackson. The only reason the defendant came to a stop was because his truck became stuck in a mudhole in the road.

Assuming, <u>arguendo</u>, Deputy Jackson did not possess reasonable and articulable facts to justify the stop, this fact, standing alone, does not afford the defendant relief from his conviction. It is a well-established rule of law in this jurisdiction that there is no constitutional immunity from an unlawful stop or arrest. <u>See</u> <u>State v. Manning</u>, 490 S.W.2d 512, 514 (Tenn. 1973); <u>State v. Miller</u>, 608 S.W.2d 158, 160 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1980); <u>Robinson v. State</u>, 517 S.W.2d 768, 772 (Tenn. Crim. App.), <u>cert</u>. <u>denied</u> (Tenn. 1974). In addition, the fact there was an illegal stop or arrest does not warrant the total exclusion of what takes place after the illegal stop or arrest. This is particularly true of crimes committed subsequent to the illegal stop or arrest. Such conduct is not obtained as a result of the exploitation of the illegal stop or arrest. <u>Brown v. Anchorage</u>, 680 P.2d 100 (Alaska 1984) (assault on a police officer); <u>Cooper v. State</u>, No. 12-93-00318-CR, 1997 WL 287619 (Tex. Ct. App., at Tyler, May 29, 1997). <u>See</u> <u>State v. Mayorga</u>, 876 S.W.2d 176 (Tex. Ct. App. 1994); <u>Roberts v. State</u>, 711 P.2d 1131 (Wyo. 1985); <u>Ellison v. State</u>, 410 A.2d 519 (Del. Super. Ct. 1979), <u>cert</u>. <u>denied</u>, 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 (1982). Thus, the evidence pertaining to the aggravated assault committed against Deputy Jackson, which occurred after the alleged stop, was admissible as evidence in this prosecution for this offense.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____

5

WILLIAM M. BARKER, JUDGE


_____
THOMAS T. WOODALL, JUDGE